NORTH AMERICAN MERCANTILE CO. *v.* UNITED STATES

No. 7955.—

Entry No. 1112.

Second Division, Appellate Term

(Decided February 19, 1951)

*Lawrence, Tuttle & Harper (George R. Tuttle of counsel)* for the appellant.
*David N. Edelstein, Assistant Attorney General (Samuel D. Spector and Daniel I. Auster, special attorneys),* for the appellee.

Before EKWALL, MOLLISON, and JOHNSON, Judges

JOHNSON, Judge: This is an application for review of the decision and judgment of the trial court, Reap. Dec. 7565, filed under the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. 1946 ed. § 1501). This reappraisement was originally decided by Chief Judge Oliver, sitting in reappraisement, published in Reap. Dec. 6272. An application for review was filed by the appellant and duly decided by the second division of this court, published in Reap. Dec. 6695, wherein the decision and judgment of the trial court was reversed and the reappraisement remanded. The trial court again handed down its decision, and a motion on behalf of the appellant for a rehearing was denied by the trial court. The appellant now brings this application for review.

The evidence before the trial court consisted of the following stipulation of fact:

It is hereby stipulated and agreed by and between counsel for plaintiff and the Assistant Attorney General, attorney for the United States, subject to approval of

the court, as to merchandise covered by the reappraisement appeal enumerated above:

(1) That this stipulation is limited to so much of said merchandise as is described in the invoice as "canned minced clams" in 7-ounce cans or tins, such item being marked "A" and initialed by Examiner *G. H. Godfrey* "GHG," and said article being appraised on the basis of the American selling price in accordance with the Presidential proclamation published in TD 47031.

(2) That such merchandise is the same in all material respects as the imported minced clams involved in *North American Mercantile Co.* v. *U. S.*, Reap. Dec. 5680 and Reap. Dec. 6072, and that the issues herein, insofar as they pertain to the proper dutiable value of said merchandise, are the same in all material respects as the issues involved in the appeals covered by said decisions.

(3) That the record in said Reap. Dec. 5680 may be incorporated herein and that upon this stipulation this appeal may be deemed submitted, it being limited to the items marked "A" on the invoice, and abandoned as to all other merchandise.

The appeal for reappraisement involved the proper value for canned minced clams imported from Japan on July 10, 1936, and entered at the port of San Francisco on July 30, 1936. The merchandise was invoiced at yen 8.50 per case and entered to meet advances by the appraiser in similar cases, under certificate of pending reappraisement, as provided by section 503 (b) of the Tariff Act of 1930 (19 U. S. C. § 1503 (b)), at United States $5.319 per case. The merchandise was appraised as entered.

The appellant contended below that, unlike the incorporated case, the question of the validity of the appraisement because of an examination by the appraiser of insufficient merchandise was not involved and the court must determine whether or not the canned clams were properly appraised on the basis of the American selling price, and if it is so found, what American selling price should be returned for the merchandise; that if the American selling price valuation is not found applicable, that the canned clams should be reappraised on the basis of the export value. The trial court in Reap. Dec. 6272 held, however, that the appraisement was completed prior to the effective date of the Customs Administrative Act of 1938, and, therefore, not only was the question of the validity of appraisement before the court but that "the answer thereto will determine the court's authority to find a value." The court pointed out that the shipment consisted of 150 cases, and one case, not specifically designated by number, was designated for examination at the appraiser's stores, and that there was a further designation "Ex. at wharf balance to make 10%." The appraiser reported his examination of the packages to have been "as ordered." Inasmuch as the collector had not specified what packages had been selected by him according to the case number, the trial court stated that the conclusion to be reached was controlled by the decision in the incorporated case, and therefore found that the mandatory provisions of section 499 of the Tariff Act of 1930 (19 U. S. C. § 1499)

had not been complied with. The court held the appraisement to be null and void *ab initio*.

The appellant contended in his application for review that the decision below should be reversed or that the division should modify it by reappraising the merchandise and finding a value therefor, either at its stipulated export value or at the American selling price, based upon sales of minced butter clams, as established by the evidence, or that it should be remanded to the trial court for a finding of value.

The division reviewed the decisions of the courts upon the question of whether or not the failure of the collector to designate by case or package numbers had been the sole basis for holding an appraisement to be null and void, and concluded that it would not feel justified in holding the appraisement to be null and void on the sole ground that the collector failed to designate the merchandise for examination by case or package numbers, as long as it appears that the collector did designate, and the examiner actually examined, not less than the statutory quantity of the merchandise. Since the trial court failed to consider the merits of the case, but dismissed the appeal, the appellate division expressed no opinion as to the issues involved, remanding the case to the trial court for disposition on the merits (Reap. Dec. 6695).

The trial court upon the merits of the case, Reap. Dec. 7565, found that the imported merchandise consisted of 7-ounce cans but that the importer's contention that the cans contained 3½ ounces drained weight and 3½ ounces of juice was not supported by any evidence contained in the record. The court did not feel it should indulge in the presumption that because it was a 7-ounce can, it contained only 3½ ounces of clams, drained weight, nor could the court find any evidence that the clams were not similar to the American product. The court noted that the entry was appraised on April 28, 1937, prior to the effective date of the Customs Administrative Act of 1938, amending section 501 of the Tariff Act of 1930. The appeals were thereupon dismissed following the ruling of our appellate court in *United States* v. *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286. The appellate court there reversed the appellate division as to its holding below "that the trial court should have found values for the merchandise in all of the reappraisement cases, including those in which the appraisements were made prior to the effective date of the amendment to section 501 of the Tariff Act of 1930–July 25, 1938," and held that the appellate division should have affirmed the trial court in dismissing the appeals because of the fact that there was nothing in the record to indicate that the method adopted by the appraiser did not result in correctly ascertaining or estimating the dutiable values of the merchandise.

The appellant's motion for rehearing was denied by the trial court (Reap. Dec. 7594). It is contended by the appellant, on the second application for review before this court, that the appraised value does not represent the American selling price of any like or similar article; that a like or similar article was not manufactured in the United States on or about the date of exportation; that the burden of proving an applicable American selling price was on the Government; that the imported clams should be reappraised at their export value; or that they should be appraised at the American selling price of minced butter clams packed in the State of Washington in cans containing 3½ ounces drained weight.

Counsel for the appellant argued that the examiner of the clams at the port of San Francisco testified in the incorporated case that the merchandise was appraised on the basis of minced whole butter clams in containers of 7 ounces, drained weight. Counsel then points out that the value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest on the party who challenges its correctness to prove otherwise; and that the appraiser made findings as to all the elements requisite to determine that the American selling price was the correct value  This being the case, it is further argued that it must be presumed that the appraiser found the existence of domestically produced minced whole butter clams packed in containers of 7 ounces, drained weight, and that such presumption was overcome by the stipulated facts.

In the record of the incorporated case appears the following colloquy:

MR. TUTTLE: This involves importations of canned clams, minced butters. I offer in evidence a can labeled " 'Namco' fancy minced ocean clams," as being representative of the merchandise covered by the invoices in these consolidated cases.   The purpose of the offer, Your Honor, is to illustrate to the court that, as stated, on this label, that the net contents of this can is 3½ ounces meat and 3½ ounces juice.

MR. SPECTOR: I will accept it as imported minced clams but not as hokki minced clams because it is not part of these importations.

MR. TUTTLE: It is offered only for the purpose of illustrating the net contents of the can and not representative of the merchandise.   It is to illustrate the cans covered by these invoices; that their net contents are 3½ ounces meat and 3½ ounces of juice.

MR. SPECTOR: On the advice of Examiner Weidner, *I am willing to consent to the fact that this can is representative of the size of the can in which these minced clams were imported, but not as representative of the contents.*   [Italics not quoted.]

JUDGE DALLINGER: It may be marked as an illustrative exhibit. (Incorporated record, page 104.)

Earlier in the record of the incorporated case, it was agreed between counsel as follows:

MR. TUTTLE: There is one fact that I didn't stress and perhaps I should have done so.   The appraisal here, as established by the testimony of the examiner,

was what he found to be the price at which minced butter clams were being sold at in San Francisco when packed in cans containing seven ounces of meat. I can prove but I don't think it need be proved. I think the Government will stipulate that no American packer in the State of Washington during the years in question here sold or offered for sale minced butter clams in cans containing seven ounces of meat. Do you think we can do that?

Mr. Spector: Yes, of course, we can. There was no seven ounce drained meat can sold or offered for sale then. We did not sell any seven ounces of drained meat to the can; what we sold was 3½ ounces to the can. (Incorporated record, pages 25–26.)

It is further argued by appellant that when the appraiser appraised on the basis of an alleged selling price in San Francisco, actually he was admitting that the appraisement was based upon the alleged selling price of a nonexistent article, and for that reason the presumption of correctness is overcome and the very basis of the appraisement destroyed. The appellant then advances the novel theory that the burden of proof rested on the Government to establish the American selling price of a domestic article to which the foreign article is like or similar and that burden the Government has failed to sustain.

The question for decision here is whether the importer, not the Government, has established whether or not there is a like or similar domestic article to the imported foreign article at an American selling price different from the price returned by the appraiser; or that the imported minced clams are not of a class or kind subject to the Presidential proclamation decreeing that minced clams shall be appraised upon the basis of the American selling price. The Government contends that the appellant has failed to make out a *prima facie* case because it failed to establish that the imported article was not similar to the American article, and that on account of the Presidential proclamation the imported merchandise must be appraised on the basis of the American selling price, and the court is not permitted to consider the invoice value, concededly representing the export value, for to do so would nullify the President's proclamation.

The record is quite confused relative to the quantity of the merchandise imported in the 7-ounce can. The stipulation of counsel quoted above by no means dispels that confusion, nor does it settle the question as to whether or not domestic minced clams like the imported clams were sold in this country.

This court decided the precise question in the case of *United States* v. *Mutual Supply Co. et al.* and *Mutual Supply Co. et al.* v. *United States*, 11 Cust. Ct. 461, Reap. Dec. 5950. That case, among other contentions, involved the question as to whether or not there was an American selling price for clams in 16-ounce tins. The court stated:

*\* \* \* In our opinion, the clams and not the containers become the essential feature of the proclamation, and it is immaterial whether or not the containers containing like or similar clams are of the size of the competitive imported clams.*

In the case of *United States* v. *Meyer Bros. Drug Co.*, Reap. Dec. 2874, this court, relative to the manner in which competitive American products were packed, stated:

> The definition of American selling price does not state that the American product should be packed in the same manner as the imported product. It is our opinion, however, that comparison should be made on the basis of approximately similar packing.
>
> *         *         *         *         *         *         *
>
> Being of the opinion, however, that clams if packed in the United States in 16-ounce cans are like or similar to the imported clams, duty is assessable thereon upon the basis of the American selling price, and as nothing appears in the record sufficient to establish an American selling price different from the price returned by the appraiser which is presumptively correct, we hold that the American selling price of canned clams packed in 16-ounce cans is as returned by the appraiser. [Italics not quoted.]

In the case before us, from an examination of the entire record, we find that the evidence is insufficient to overcome the presumption of correctness of the appraiser's finding of value, to wit, American selling price of $5.319 per case.

The question now arises whether or not the court below should have returned a value rather than affirmatively acting upon the motion of the Government to dismiss, because of the failure of the importer to establish a value. The case of *United States* v. *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.*, *supra* quoted by the trial court, settles that question.

On the authority of the foregoing decision, we find no error in the decision and judgment of the trial court in granting the Government's motion to dismiss.

From a careful consideration of the record before us, we find as facts, as follows:

1. That the imported merchandise consists of canned minced clams imported from Japan in 7-ounce cans.

2. That by reason of the proclamation of the President, T. D. 47031, the imported merchandise, canned clams, is subject to appraisement upon the basis of the American selling price.

3. That the principal market for canned minced clams is in San Francisco, Calif., as found by the appraiser.

4. That the American selling price for canned minced clams in 7-ounce cans is the price returned by the appraiser.

From such state of facts we conclude that the decision and judgment of the trial court, granting the Government's motion to dismiss, because of the importer's failure to establish a value, is affirmed.

Judgment will be entered accordingly.